**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CAROLINE K. BELT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 04-0331-WS-M** |
| | ) | |
| **ALABAMA HISTORICAL** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on defendant Alabama Historical Commission's Motion for Summary Judgment (doc. 28). The Motion has been briefed and is ripe for disposition at this time.

**I.      Background.**[1]

Plaintiff Caroline K. Belt filed this action against defendant Alabama Historical Commission (the "Commission") on May 21, 2004.[2] The lone cause of action set forth in the Complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* In particular, plaintiff maintains that the Commission unlawfully retaliated against her for giving a deposition in connection with a race discrimination lawsuit she had previously filed against the Commission. According to plaintiff, this retaliation took the following two forms: (1) the Commission removed, or

---

[1]      The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004); *Johnson v. Governor of State of Fla.*, 353 F.3d 1287, 1292 (11th Cir. 2003) (on summary judgment, "the district court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor"). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor.

[2]      The Complaint also named the State of Alabama and Blanton Blankenship as defendants. By Order (doc. 14) dated October 1, 2004, the undersigned granted those defendants' motions to dismiss. As such, the Commission is the only remaining defendant.

prevented plaintiff from performing, six distinct job duties, and (2) the Commission "repeatedly allowed and/or encouraged others to physically threaten and verbally harass Plaintiff while at her work place." (Complaint, ¶ 9.)

Belt worked as a Museum Aide at the Commission's Fort Morgan site from August 1989 through May 2004, when she went on an unpaid leave of absence for medical reasons. (Blankenship Aff., ¶ 1.) Belt resigned from her position on February 18, 2005. (*Id.*)[3] Throughout her employment at the Commission, Belt's immediate supervisor was Blanton Blankenship. (*Id.*)

### A.    The 2002 Lawsuit.

In June 2002, Belt initiated her first lawsuit against the Commission, styled *Caroline K. Belt v. State of Alabama and Alabama Historical Commission*, CV 02-421-BH-M (the "2002 Lawsuit"). As set forth in the First Amended Complaint, the crux of that action was Belt's contention that the Commission had discriminated against her on the basis of her race (black) by denying her a promotion to the position of Historic Artisan - Living History Interpreter, denying her the opportunity to train for other positions, and denying her the opportunity to perform certain duties of her Museum Aide job, all in violation of Title VII.

In connection with the 2002 Lawsuit, Belt's deposition was taken by the Commission's counsel on February 14, 2003. Perusal of the deposition transcript does not reveal that any particularly unusual or inflammatory events transpired there; rather, plaintiff merely expounded on the factual basis for her Title VII claims. She explained that her application for the interpreter job was denied because the Commission never opened that position for hiring. (Belt Dep. of 2/14/03, at 43-44.) She also made clear that she was uninterested in serving as a costumed reenactor. (*Id.* at 86.) With regard to the

---

[3]    Notwithstanding the fact that Belt is no longer employed by the Commission, this case is devoid of allegations of retaliatory discharge or retaliatory constructive discharge. Nor does plaintiff claim that the Commission retaliated by forcing her to take a leave of absence in May 2004. Accordingly, for purposes of this Motion, the Court need not concern itself with the circumstances surrounding Belt's leave of absence or her subsequent resignation, as those events are beyond the scope of the pleadings. In that regard, plaintiff's suggestions that her leave resulted from "job-related stress" and that her resignation was the product of her "feeling afraid, and ... very unwanted as an employee" (Opposition Brief, at 6) have no bearing on the Rule 56 calculus.

denial of job duties, plaintiff asserted that her job description included such functions as performing research connected with collections, giving guided interpretive tours, and implementing long range plan development, but that she had never been given the opportunity to perform such functions.  (*Id.* at 52-54.)  Belt testified that the Commission had intimated that she would have such responsibilities when she was hired, but that her job had instead been confined to "baby-sitting a museum and doing a little bookkeeping and running a gift shop."  (*Id.* at 54.)[4]  As for training, plaintiff stated that "nobody has trained me to do nothing."  (*Id.* at 63.)  In general, Belt's deposition in February 2003 did not appear to offer earthshattering revelations or new allegations of any substantial importance.  To the contrary, her testimony on that occasion was closely aligned with the allegations of her First Amended Complaint in the 2002 Lawsuit and merely provided additional detail pertaining to same.

On June 26, 2003, Senior District Judge W.B. Hand granted the Commission's motion for summary judgment and dismissed all of Belt's race discrimination claims.  As grounds for this conclusion, Judge Hand found that Belt's failure to promote claim was time-barred because she had failed to file a timely EEOC charge, that the "general option" historic artisan position she sought was never opened for applications, that Belt was unqualified for such a position in any event because she was unwilling to dress in costume, and that the Commission had filled the "restoration option" historic artisan position (which plaintiff did not seek) with two employees, one of whom was black.  Judge Hand was not swayed by plaintiff's evidence that a Commission employee named Mark Driscoll had told her she was not eligible for the promotion "because there were no blacks in the Civil War"; to the contrary, he rejected this evidence because there was no showing that Driscoll had been involved in any way in hiring or other personnel decisions for that position.  As for Belt's claims concerning failure to train and failure to be allowed to perform her job duties, those were dismissed on grounds of failure to exhaust administrative remedies and failure to show that Belt was treated differently than other employees in those respects.

---

[4]     She also candidly admitted that the vast majority of Commission employees did not actually perform or had not been given all of the enumerated duties in their job descriptions.  (*Id.* at 60-61.)

-3-

**B.**      *Plaintiff's Job Duties and Modifications to Same.*

In the present action, Belt maintains that the Commission retaliated against her for giving a deposition in the 2002 Lawsuit.  According to the Complaint, the principal form of this retaliation was the systematic removal of six of Belt's job duties in the months following her deposition.  Those duties, and the corresponding evidence (viewed in the light most favorable to plaintiff, as it must be for summary judgment purposes), are summarized below.[5]

**1.**      *Maintenance of Gift Shop Inventory and Records.*

From the outset of her employment in 1989 through February 2003, Belt was responsible for preparing purchase orders for gift shop inventory, for submitting those orders to Blankenship for approval, and for transmitting the approved purchase orders to the vendor.  (Belt Dep. of 2/3/05, at 12-14.)[6]  Plaintiff's dissatisfaction on this front relates to a single interlude in June 2003, when Blankenship deviated from this protocol by "order[ing] some of the items himself."  (*Id.* at 15.)  In July 2003, Blankenship issued a memorandum clarifying that the procedure for ordering gift shop inventory

_____

[5]      Plaintiff has acknowledged that certain of her job responsibilities, including specifically her duties to handle bakery reservations and to keep the glass cases clean in the museum, remained unchanged at all relevant times.  (Belt Dep. of 2/3/05, at 74-78.)

[6]      The Commission includes amidst its exhibits the complete 214-page transcript of plaintiff's February 2005 deposition.  In so doing, defendant runs afoul of Local Rule 5.5(c), which provides that "If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."  *Id.*  By attaching such extraneous documents, defense counsel obliges the Court to wade through dozens of pages of superfluous materials in search of those portions of the exhibit that are relevant to the Motion.  This practice is inappropriate.  *See generally Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Nicholas Acoustics & Specialty Co. v. H & M Const. Co.*, 695 F.2d 839, 846-47 (5th Cir. 1983) ("practical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting").  The Court therefore declines movant's implicit invitation to scour plaintiff's voluminous deposition transcript *sua sponte* for uncited evidence that might lend support to the Rule 56 Motion.

was the same as it always had been, with no diminution or alteration of Belt's role.  (*Id.* at 17-19.)[7]
Thus, plaintiff seeks to predicate a Title VII retaliation claim on the fact that in June 2003, her
supervisor ordered inventory items for the gift ship himself, whereas at all times both prior to and
subsequent to that incident plaintiff performed that function.[8]  Although plaintiff's brief blusters that
Blankenship "changed the well-established procedure" and "gave her no explanation," she fails to
acknowledge the undisputed facts that this was an isolated incident and that the Commission
immediately reverted to that very same "well-established procedure" for the remainder of Belt's
employment.

---

[7]      The July 2003 memorandum advised Belt that the protocol for ordering gift shop
inventory was "essentially the same way we have been doing it."  (Plaintiff's Exh. 3.)  Incidently, this
memorandum is one of numerous exhibits that plaintiff has submitted without authentication or
verification of any kind.  Generally, courts ruling on Rule 56 motions may consider only admissible
evidence.  *See Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) ("In
considering a summary judgment motion, a court may only consider evidence that is admissible or that
could be presented in an admissible form.") (citation omitted).   Documents must generally be properly
authenticated to be considered at summary judgment, unless it is apparent that those documents can be
reduced to admissible, authenticated form at trial.  *Bozeman v. Orum*, 199 F. Supp.2d 1216, 1222
(M.D. Ala. 2002).  Those requirements were not followed as to this exhibit.  Nonetheless, there
appears to be no dispute that "Plaintiff's Exhibit 3" is in fact a true and accurate copy of the memo; as
such, it is apparent that this document can be reduced to admissible, authenticated form at trial, and the
Court will consider it on that basis.  The same rationale applies to certain other unverified,
unauthenticated documents submitted by plaintiff.  Even so, the proper procedure would have been for
plaintiff to verify her exhibits via deposition, affidavit or otherwise, which she has not done.

[8]      Plaintiff does not, and cannot reasonably, take issue with any of these facts, which after
all are drawn directly from her deposition testimony.  Nonetheless, in her brief, Belt states in blanket,
conclusory terms that she "disputes all of Defendant's factual statements concerning the removal,
alteration or modification of Plaintiff's job responsibilities for Defendant during her employment ... and
contained through pages 2-6 of Defendant's brief."  (Opposition Brief, at 1-2.)  This position is both
unreasonable and untenable.  Most of defendant's factual statements that plaintiff now "disputes" are
culled from plaintiff's own testimony.  As such, her across-the-board objection to "all of Defendant's
factual statements" cannot have been offered in good faith, but rather appears to be the result of a
counterproductive "object-to-everything" strategy that runs counter to the spirit (if not the letter) of
Local Rule 7.2(b), as well as conflicting with basic principles of effective advocacy.  Plaintiff cannot
fabricate an issue of material fact via an unprincipled, unfounded, unreasonable objection to each and
every fact presented by defendant, including those that are verbatim recitations of plaintiff's testimony.

2.     *Maintenance of Ferry and Fort Admissions Records.*

Plaintiff contends that the "most critical responsibility" removed from her after the February 2003 deposition involved ferry and fort admissions records. (Opposition Brief, at 4.) From 1989 through February 2003, Belt testified, she would receive all receipts directly from the ferry company. (*Id.* at 29-30.) Belt would maintain those receipts, and would prepare monthly, quarterly and annual reports relating to them. (*Id.* at 30.) During the summer of 2003, the procedure changed. (*Id.* at 34.) Specifically, Blankenship began to procure the receipts from the ferry company himself, then make copies of those receipts and provide them to Belt for use in preparing her reports. (*Id.* at 32-34.) Thus, Belt was no longer responsible for maintaining the ferry and fort admissions records (*i.e.*, for physically storing those original records at the museum); however, she continued to have responsibility for preparing periodic reports based on those records.[9]

3.     *Management of Office Supplies.*

Plaintiff's third relevant job responsibility involved office supplies for the Fort Morgan site. Between 1989 and February 2003, Belt was responsible for ordering office supplies for the entire site, and those supplies were stored in the museum. (*Id.* at 40-42.) Beginning in July 2003, however, the Commission moved all office supplies out of the museum and stored them at the administration building, which had been newly renovated. (*Id.* at 42-44, 46.) As a result, from July 2003 forward, Belt had no involvement in ordering office supplies.[10]

_____

[9]     In her brief, Belt complains that Blankenship often failed to provide copies of the receipts to her in a timely fashion for purposes of preparing her reports. (Opposition Brief, at 4.) As this newly raised allegation is not set forth in the Complaint, the Court will not consider it at this time. A brief opposing summary judgment is not a proper mechanism for *de facto* amendments to a complaint. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[10]     Plaintiff's opposition brief includes an allegation that Blankenship denied her basic office supplies that she needed to perform her job. (Opposition Brief, at 4.) Again, this is a new allegation not set forth in the Complaint, and therefore cannot be raised for the first time in an opposition brief to a summary judgment motion. *See Gilmour*, 382 F.3d at 1315.

4.      *Maintenance of Personnel Time and Leave Records.*

Another job responsibility of Belt's dating back to 1989 was to maintain personnel leave and time records relating to hours worked, vacation time, and the like.  (*Id.* at 47.)  In particular, plaintiff would distribute the appropriate forms to employees, would fax completed time sheets and leave records to Commission officials, and would retain copies of those records in a file.  (*Id.* at 47-48, 52.)  In July 2003, however, Blankenship transferred all personnel files and forms to the administration building.  (*Id.* at 49-50.)  As a result of this change, Belt was no longer responsible for maintaining personnel records for anyone except herself; instead, all Commission employees (including Belt) came to bear responsibility for their own time and leave records.  (*Id.* at 50-52.)

5.      *Communication with Public concerning Events.*

The fifth challenged job duty concerns Belt's obligation to communicate with the public concerning upcoming events.  Throughout her employment at the Commission, both before and after February 2003, Belt was responsible for fielding inquiries from the public concerning upcoming events.  (*Id.* at 54.)  This job duty never changed; thus, her allegation in the Complaint that the Commission removed "her responsibility for ... communication with the public concerning upcoming events" is undermined by her own testimony.  (Complaint, at ¶ 7(d).)  Nonetheless, plaintiff complains that there were events in March and April 2003 for which she received the necessary information only one day before (or even the day of) the event, leaving her with inadequate time and inadequate information to keep the public informed.  (Belt Dep. of 2/3/05, at 55-58.)

6.      *Submission of Reports to Central Office in Montgomery.*

Sixth and finally, Belt contends that the Commission retaliated by stripping her of the responsibility to submit monthly reports on the museum and the fort (including admissions, sales, and the like) to the Commission's central office in Montgomery.  From 1989 through early 2003, plaintiff was responsible for completing these reports, and transmitting them to Montgomery.  (*Id.* at 60-61.)  In June 2003, Blankenship provided Belt with a memorandum stating that he would begin mailing all

reports to Montgomery effective July 1, 2003.  (Plaintiff's Exh. 16.)[11]  As a result, plaintiff retained responsibility for preparing these reports; however, she no longer was responsible for sending them to the central office.  (Belt Dep. of 2/3/05, at 64-65.)  Instead, Blankenship and other Commission officials would review Belt's reports and forward them to Montgomery themselves.  (*Id.* at 70.)  Thus, plaintiff's objection on this score is not that she was deprived of the duty of compiling the reports, but is rather that her responsibility of sending these reports to the central office was taken away.

C.      **Alleged Harassment.**

The second category of retaliation identified in the Complaint is that the Commission "repeatedly allowed and/or encouraged others to physically threaten and verbally harass Plaintiff while at her work place."  (Complaint, ¶ 9.)  This allegation relates to events occurring in October and November 2003, when Belt maintains she faced two incidents of harassment, one from a co-worker and a second from that co-worker's son.  On the first occasion, Belt asserts, during a dispute with a co-worker named Penny McIntosh about how to operate a cash register, Ms. McIntosh called her "crazy."  (Belt Dep. of 2/3/05, at 83.)  Plaintiff reported the incident to Blankenship.  (*Id.* at 88.)  Although Belt contends that Blankenship never talked to her about that incident, the uncontroverted evidence is that Blankenship did confront Ms. McIntosh, that Ms. McIntosh admitted that she may have used "ill-chosen words," and that she stated that she would stay away from Belt.  (*Id.* at 90; Blankenship Aff., ¶ 6.)

The second incident occurred several weeks later, when Tim McIntosh, who was Ms. McIntosh's son and not a Commission employee, came on site during Belt's lunch break and yelled from 50 feet away that she was "crazy" and that she belonged in a mental institution.  (Belt Dep. of 2/3/05, at 97-98; *see also* Defendant's Exh. G.)  Belt reported the incident to Blankenship in writing.

---

[11]      A subsequent memorandum from Blankenship dated September 12, 2003 elaborated on this new protocol by stating as follows: "When the monthly reports or any other reports requested by Montgomery and compiled by the Museum Aide or any other site personnel under my supervision are completed, the reports will be submitted directly to me ....  I will review them and forward them to Dr. Kolberg for his review.  The reports will then be sent to the Montgomery office. ... You are not to mail or FAX any reports to the Montgomery office."  (Plaintiff's Exh. 27.)

(Belt Dep. of 2/3/05, at 101.)  Plaintiff was not aware of anything that Blankenship did in response; however, the uncontroverted evidence is that he spoke to Ms. McIntosh about the incident, suggested that her son remain off the premises if he might come in contact with plaintiff, and obtained a two-way radio for plaintiff's use.  (*Id.* at 103-04; Blankenship Aff., ¶ 6.)[12]  Plaintiff had no further contact with Mr. McIntosh after the November 2003 incident.  (Belt Dep. of 2/3/05, at 117.)

In addition to these two incidents involving Ms. McIntosh and her son, Belt contends that she suffered harassment in two other respects.  First, she sustained several flat tires in the museum parking lot in November 2003 when nails were found in each of her tires.  (*Id.* at 118-20.)  Plaintiff reported this damage, but she had no information as to who might be responsible.  (*Id.* at 122-23.)  Blankenship suggested that she park her car in front of his office and drive a State vehicle to the museum, but Belt refused this proposed accommodation.  (*Id.* at 123.)  Second, Belt proffers evidence that in April 2004 she advised Blankenship that she had been told by two sources that an employee named Dan Mitchell "stated he was going to start something with [her] before he quits his job."  (Plaintiff's Exh. 24.) According to plaintiff's evidence, Blankenship advised Belt that he needed to know the names of her sources in order to investigate the matter, but Belt refused to provide that information.  (Plaintiff's Exh. 25, 26.)  There is no evidence that any incidents involving Mitchell ever materialized.

**D.    *Plaintiff's EEOC Charge.***

On or about August 6, 2003, plaintiff filed a Charge of Discrimination against the Commission with the Equal Employment Opportunity Commission (the "EEOC").  In her Charge, Belt claimed that defendant had retaliated against her after February 14, 2003 (the date of her deposition in the 2002 Litigation), by either removing certain job duties or preventing her from performing them, including the six specific duties identified in her ensuing Complaint.  The EEOC Charge made no mention of any

---

[12]    Blankenship avers that part of his response to plaintiff's complaint about Mr. McIntosh was to have a panic button installed in the museum office.  (Blankenship Aff., ¶ 6; *see also* Defendant's Brief, at 5.)  However, Belt testified that the panic button had been installed several years earlier.  (Belt Dep. of 2/3/05, at 114-15.)  For purposes of summary judgment, this evidence is construed in the light most favorable to plaintiff, and the Court will assume that the panic button predated Blankenship's remedial efforts in response to the McIntosh incidents.

alleged harassment by co-workers or nonemployees, nor did it suggest that the Commission was retaliating against her by allowing or instigating such harassment.  (Nobles Aff., at Exh. A.)  It does not appear that Belt ever presented her harassment-related allegations to the EEOC.

On February 29, 2004, the EEOC issued Belt a "right-to-sue" letter.  This litigation followed.

### E.       The Rule 56 Motion.

The Commission has now filed a Motion for Summary Judgment seeking dismissal of plaintiff's retaliation claims in their entirety on the ground that Belt cannot establish a *prima facie* case under Title VII.  Alternatively, the Commission maintains that there are legitimate nonretaliatory reasons for the personnel decisions in question, and that certain portions of Belt's retaliation claims are beyond the scope of her EEOC Charge.[13]

## II.     Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its

---

[13]        Under Local Rule 7.2(a), "[a]ny motion for summary judgment shall be accompanied by a brief in support of the motion, ***together with suggested Determinations of Undisputed Fact and Conclusions of Law,*** appropriately designated, stated in separately numbered paragraphs ..., together with a proposed order of judgment."  LR 7.2(a) (emphasis added).  Defendant's Rule 56 submission does not comply with these requirements, inasmuch as it has filed only a Motion and a brief, without the requisite suggested fact determinations, legal conclusions or order of judgment.  Such omissions generally preclude consideration of a Rule 56 motion in this District until they are rectified.

Nonetheless, in its discretion, the Court will rule on the Commission's Motion without strict compliance with L.R. 7.2(a).  This determination is made not to reward defendant's oversight, but rather in consideration of the following factors: (i) the Commission at least partially complied with LR 7.2(a) by embedding a narrative statement of undisputed facts in its brief, (ii) plaintiff has not objected, (iii) the Court did not become aware of this defect until briefing concluded, and (iv) the benefits to the Court of requiring supplementation to comply with LR 7.2(a) are outweighed by the costs in terms of taxation of the parties' resources and delayed resolution of issues.  Nonetheless, defense counsel is cautioned to devote closer attention to the Local Rules and to adhere closely to their strictures in future filings in this District Court.

responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted).

## III.    Analysis.

### A.    Failure to Exhaust Administrative Remedies as to Harassment Claim.

The logical starting place for the analysis is to examine whether the harassment component of plaintiff's Title VII retaliation cause of action has been properly raised. If it has not, then the Commission's arguments relative to Belt's ability to establish a *prima facie* case of retaliation apply only to the job duty claims, and the harassment issue need not be addressed.[14]

---

[14]    In discussing this issue, defendant cites to a lone decision, *Chanda v. Engelhardt ITCC*, which it cites at 243 F.3d 1219 (11th Cir. 2000). No such case is found at that location in the Federal Reporter, 3rd Series, and the Court has searched in vain for any published federal opinion styled *Chanda v. Engelhardt ITCC*. There is, however, a relevant case styled *Chanda v. Engelhard/ICC*, 234 F.3d 1219 (11th Cir. 2000). Defendant is reminded to check its citations (both for spelling and accuracy of numerical citation) prior to submitting a brief in federal court.

A potential plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the EEOC. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The Eleventh Circuit "has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (citation omitted). As a result, a Title VII plaintiff's "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation and citation omitted). Nonetheless, because courts are reluctant to derail Title VII claims on procedural technicalities, "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (citation omitted); *see also Green v. Elixir Industries, Inc.*, 407 F.3d 1163, 1168 (11th Cir. 2005) (explaining that requiring verbal precision and finesse from those to be protected would falsify Title VII's hopes). When discrepancies exist between an EEOC charge and a subsequent complaint, "[t]he proper inquiry ... is whether the complaint is like or related to, or grew out of the allegations in the EEOC charge." *Green*, 407 F.3d at 1168 (citation omitted).

In its summary judgment brief, the Commission argues that Belt's harassment allegations are not properly presented because she failed to include them in her original EEOC Charge, or to file an amended charge to bring them before the EEOC. (Defendant's Brief, at 9.) Indeed, plaintiff's Charge focused on removal of job duties and prevention of performance of job duties, without alluding to any mistreatment that the Commission had encouraged or permitted from Belt's co-workers or members of the public. Invoking the legal standard articulated in *Green*, the Commission asserts that the harassment allegations have not been exhausted, inasmuch as "[a]llegations of the removal of job responsibilities are very different from allegations of allowing harassment by third parties, and the investigation of the first would not lead to discovery of the second." (*Id.*)

In response to the contention that her harassment claims are barred for failure to exhaust administrative remedies, Belt is silent. She makes no attempt to rebut the exhaustion argument or to

explain how plaintiff believes her claims that the Commission fomented or permitted harassment of her lie within the scope of her EEOC Charge.  The law is clear that "the onus is upon the parties to formulate arguments" on summary judgment.  *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf" in response to a summary judgment motion); *see generally Laborers' Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions.").  As Belt has not seen fit to respond to defendant's exhaustion argument, it is not incumbent on this Court to identify and articulate plaintiff's counterarguments for her.  This fact alone would justify granting the Commission's Motion for Summary Judgment as to the harassment issue on the basis of failure to exhaust administrative remedies.

Even if plaintiff had argued that the McIntosh incidents, the nails in her tires and the Mitchell incident were reasonably within the scope of the EEOC investigation, the Court remains of the opinion that those grounds for relief have not been exhausted.  As noted *supra*, the governing legal standard is whether these claims are within the ambit of an EEOC investigation that could reasonably be expected to grow out of the Charge.  This question must be answered in the negative.  The allegations in the EEOC Charge of truncated job duties were of a much different character than the harassment concerns identified for the first time in the Complaint.  It is difficult to envision how an EEOC investigation relating to Belt's job duties could reasonably expand to address claims that a co-worker and her son had called the plaintiff "crazy" and that an unknown person may have punctured her tires.[15]  Equally importantly, the harassment issues are temporally separated from the job duties issues.  Plaintiff's EEOC Charge

---

[15]      In that regard, this case is readily distinguishable from the Eleventh Circuit's recent decision in *Green*, in which the facts relevant to the EEOC charge and those relevant to the complaint were "inextricably intertwined."  *Green*, 407 F.3d at 1168.

maintains that beginning in February 2003, her job responsibilities had been curtailed; however, the incidents of alleged harassment occurred much later, between October 2003 and March 2004. Simply put, an EEOC investigation into reduced job duties in spring 2003 could not reasonably be expected to grow into an investigation into alleged harassment by co-workers in fall 2003 and spring 2004. The differences in subject matter and relevant temporal period are simply too great. Accordingly, it is the opinion of this Court that a reasonable investigator could not have concluded from the EEOC Charge that Belt intended to complain that the Commission was encouraging or allowing others to threaten and harass her in retaliation for her February 2003 deposition.

Because plaintiff's harassment-related claims were not administratively exhausted, they are barred from consideration at this time. Defendant's Motion for Summary Judgment is therefore **granted** as to plaintiff's claims that defendant encouraged or allowed others to harass her, in violation of Title VII's retaliation provisions.[16]

---

[16] Even if plaintiff had responded to the exhaustion argument, and even if plaintiff were able to defeat that argument, summary judgment would remain appropriate on the harassment claims. The evidence, taken in the light most favorable to Belt, is that on two isolated occasions a person called her "crazy," that she found nails in her tires on several occasions, and that she was informed by unnamed sources that a co-worker intended to "start something" with her. Viewed in the aggregate, the alleged incidents of harassment are far too mild and isolated to satisfy the "severe and pervasive" threshold required to be redressable under Title VII. *See Gillis v. Georgia Dept. of Corrections*, 400 F.3d 883, 888 (11th Cir. 2005) (recognizing that Title VII is "neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace"). Even if they were actionable, there is no factual nexus linking the complained-of acts to the Commission, and therefore no basis for attributing these events to retaliatory animus by the Commission; rather, the undisputed evidence is that the Commission responded promptly and effectively to plaintiff's concerns of harassment as soon as she raised them. *See generally Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) ("Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action."). After each of the two "crazy" incidents, Blankenship spoke with Ms. McIntosh and advised her to avoid a recurrence of such events by either herself or her son. Those interventions were apparently successful, as Belt reported no further run-ins with either Ms. McIntosh or her son. Upon learning of the tire incidents, Blankenship offered to allow Belt to park her car in a different location in front of a different building and drive a State car to the museum. She refused. Finally, the "start something" allegation is a nonstarter, inasmuch as (a) Blankenship's attempt to investigate plaintiff's concern on this point was stymied by her refusal to identify her sources, and (b) in

### B.    Removal of Job Duties Claims.

The gravamen of plaintiff's retaliation claim, as articulated both in the EEOC Charge and in the Complaint, is that the Commission diminished her job responsibilities in the spring and summer of 2003 in retaliation for her having given a deposition on her own behalf in February 2003 relating to the 2002 Litigation.  Defendant maintains that plaintiff is unable to establish a *prima facie* case of retaliation.  The Court agrees.

### 1.    Retaliation Standard.

In addition to prohibiting employment discrimination on the basis of race, Title VII bars an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see also Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("Retaliation is a separate violation of Title VII.").[17]  Plaintiff offers no direct evidence of retaliation, but rather grounds this cause of action exclusively on circumstantial proof.  In the absence of direct evidence, Title VII retaliation claims turn on precisely the same traditional *McDonnell Douglas* burden-shifting principles as do other Title VII claims.  *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).  Thus, a plaintiff bears the burden of establishing a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse

_____

any event, there is no evidence that the co-worker ever in fact did "start something" with her.  In short, this evidence is wholly insufficient to allow any reasonable factfinder to conclude that the Commission retaliated against Belt by "repeatedly allow[ing] and/or encourag[ing] others to physically threaten and verbally harass" her.  (Complaint, ¶ 9.)  Thus, even if the Court were to overlook the glaring exhaustion infirmity in the harassment claims and consider them on the merits, they would nonetheless wither under Rule 56 scrutiny.

[17]       The merits of the retaliation claim are distinct from those of the underlying race discrimination claim in the 2002 Lawsuit.  *See Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed").

action. *See Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Bass v. Board of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001).[18]

If a plaintiff makes a *prima facie* showing, then the employer must articulate a legitimate, non-retaliatory reason for the challenged employment decision. *See Brochu*, 304 F.3d at 1155; *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the defendant produces legitimate reasons for the adverse employment action, then the plaintiff must show that defendant's stated reasons are pretextual. *See Brochu*, 304 F.3d at 1155. A plaintiff may establish pretext "either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief." *Hall v. Alabama Ass'n of School Boards*, 326 F.3d 1157, 1166 (11th Cir. 2003); *see also Wilson*, 376 F.3d at 1088 (plaintiff may prevail "by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination"). Of course, the ultimate burden rests on the plaintiff to show that the employer's stated reason is a pretext for unlawful retaliation. *See Pennington*, 261 F.3d at 1266; *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

2.    *Whether Plaintiff Engaged in Protected Activity.*

The Commission insists that plaintiff is unable to establish any of the three prongs for a *prima facie* case of retaliation, arguing that Belt cannot show that she engaged in protected activity, that she suffered an adverse employment action, or that there was a causal nexus between the two. The Commission first urges the Court to find that Belt did not engage in protected activity because she could not reasonably have believed that the Commission was violating Title VII with regard to the allegations

---

[18]    Belt's burden of establishing a *prima facie* case is not heavy. *See Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one"); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (plaintiff's "burden in proving a *prima facie* case is light").

underlying the 2002 Litigation. (Defendant's Brief, at 6-8.) In making this assertion, defendant invokes the well-established principle that to show protected expression a plaintiff generally "must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks*, 291 F.3d at 1311 (citation omitted).

Under Title VII, an employee is protected from retaliation if she either (a) "has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or (b) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e-(3)a. Courts have suggested that a reasonable good faith requirement applies to activities under both the opposition clause and the protection clause. *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 891 (7th Cir. 2004) ("We believe that the same threshold standard should apply to both opposition and participation clause cases."); *see generally Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998) (declining to decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement, although it clearly would be under the opposition clause). Defendant argues at length that plaintiff did not have a reasonable good faith belief that the 2002 Litigation was warranted, but that is not the issue. Indeed, Belt has designated her "protected activity" in this case as being not the filing of the complaint in June 2002, but rather her participation in a deposition eight months later. As such, it is of no consequence to the instant query whether the 2002 Litigation was initiated in good faith, because plaintiff does not frame her initiation of that lawsuit as protected activity. To the contrary, all that matters is whether plaintiff testified in good faith at her deposition in February 2003 because it is that deposition that plaintiff characterizes as a statutorily protected act.

Defendant offers no evidence or argument that Belt did not conduct herself in the deposition in a reasonable, good faith manner. Belt attended that deposition at defense counsel's behest. At that time, she patiently answered defense counsel's questions for several hours. There is no suggestion by defendant that she lied, deceived or otherwise acted in bad faith during her deposition. Moreover, the Court's independent review of the February 2003 deposition transcript reveals no basis for concluding

-17-

that plaintiff's participation therein lacked good faith.  Based on these considerations, the Court finds that plaintiff's testimony in a deposition in February 2003 was plainly statutorily protected activity under the participation clause of Title VII's retaliation provision for purposes of establishing a *prima facie* case.

### 3.    *Whether Plaintiff Suffered an Adverse Employment Action.*

The critical battlefield for the Rule 56 Motion is whether Belt can satisfy the "adverse employment action" requirement.  The law is clear that "not every unkind act is sufficiently adverse" to qualify as an adverse employment action giving rise to a retaliation claim.  *Shotz*, 344 F.3d at 1181 (citation omitted); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) ("not all conduct by an employer negatively affecting an employee constitutes adverse employment action" for Title VII purposes).  Rather, an employment action meets this threshold only when it "results in some tangible, negative effect on the plaintiff's employment" through "a serious and material change in the terms, conditions or privileges of employment ... as viewed by a reasonable person in the circumstances."  *Shotz*, 344 F.3d at 1181-82 (citations omitted); *see also Bass*, 256 F.3d at 1118 (explaining that "some threshold level of substantiality" must be satisfied for conduct to constitute an adverse employment action, inasmuch as not everything that makes employee unhappy is actionable); *Stavropoulos*, 361 F.3d at 617 (no adverse employment action where complained-of conduct had no effect on plaintiff's employment status, such that it was not objectively serious and tangible enough to be adverse employment action).  Simply stated, it is clear that to show an "adverse employment action" for Title VII purposes, "the employer's action must impact the terms, conditions or privileges of the plaintiff's job in a real and demonstrable way," and that a plaintiff must show that a reasonable person in the circumstances would have viewed it as "a ***serious and material*** change in the terms, conditions, or privileges of employment."  *Davis*, 245 F.3d at 1239.

To assess whether an adverse employment action has occurred, the Court may not disentangle plaintiff's various allegations of wrongdoing and apply the standard to them piecemeal, but rather must consider them collectively.  *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (explaining that it is not necessary to decide whether anything less than totality of alleged reprisals

would be sufficient to constitute prohibited retaliation, where the employer actions at issue, considered collectively, meet that threshold); *see also Shannon*, 292 F.3d at 716 (even though certain complained-of acts did not rise to the level of adverse employment actions when considered individually, their total weight when considered collectively does constitute an adverse employment action); *Bass*, 256 F.3d at 1118 (similar).[19]

The sum total of the employer acts about which Belt complains is the following: (a) temporary removal of her duty to order gift shop inventory on one occasion in June 2003; (b) elimination of her responsibility to store ferry and fort admissions records and personnel records; (c) reassignment of the function of ordering and maintaining office supplies to a central administrative office; (d) inadequate/untimely information hampering her ability to fulfill her duty of communicating with the public on various occasions; and (e) elimination of her responsibility to transmit reports to the Montgomery office.  Plaintiff retained responsibility for ordering gift shop inventory, for reviewing records and preparing reports relating to ferry and fort admissions, for communicating with the public about site events, and for preparing monthly reports on the museum and fort.  Her job title, pay, work hours, and benefits were unchanged.  Plaintiff's other assigned job duties, such as making bakery reservations and cleaning the glass cases, likewise remained steady.

Thus, the acts at the heart of this case fall squarely under the heading of changes in work assignments.  The Eleventh Circuit has expressed profound skepticism at the ability of changes in job duties to rise to the level of adverse employment actions when unaccompanied by tangible harm, except

---

[19]    In arguing that no *prima facie* showing has been made, the Commission urges this Court to disaggregate the alleged wrongful acts into their individual component parts and consider each allegation separately in assessing whether an "adverse employment action" has been shown.  According to defendant, "[a]ctions alleged to be adverse employment actions are to be judged individually, not collectively, as to whether this test is satisfied."  (Defendant's Brief, at 9, 14.)  This statement is irreconcilable with Eleventh Circuit's precedents as described *supra*.  Although the Commission repeatedly invokes the *Gupta* decision in support of its position, *Gupta* in fact reaffirmed the well-settled principle that a plaintiff's allegations are to be weighed collectively in assessing whether the "adverse employment action" criterion is satisfied.  *See Gupta*, 212 F.3d at 588 n.16 (concluding that plaintiff had failed to satisfy adverse employment action requirement "after considering all of her allegations individually and collectively").

in "unusual instances" where the change is sufficiently substantial and material. *Davis*, 245 F.3d at 1244-45. "In the vast majority of instances ... an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause." *Id.* at 1245. A contrary ruling would authorize a flood of work assignment claims that would place federal courts in the untenable and inappropriate position of acting as a "super-personnel department" to second-guess the employer's business judgment and expertise in balancing limited personnel resources with the important and challenging tasks expected of them by the public. *See id.* at 1244.

Notwithstanding the foregoing authorities and the relatively minor job modifications recited in her Complaint, plaintiff argues that the requisite level of substantiality is satisfied here. She argues that the Commission removed "her most significant written job responsibilities which she has performed for approximately 14 years," that she was given no explanation for the change, that she found herself "isolated and unable to perform the basic duties in her job description," and that her authority was dismantled. (Opposition Brief, at 9.) But the evidence, viewed in the light most favorable to plaintiff, shows that the overwhelming majority of her duties were unchanged and that the alterations in question were insubstantial modifications to workplace procedures (*i.e.*, plaintiff was to submit reports to her supervisor rather than faxing them to the central office). Her core duties of overseeing inventory in the gift shop; preparing ferry and fort admissions reports, as well as other periodic reports; and acting as a liaison to the public remained unchanged. She suffered no tangible harm. That plaintiff was no longer allowed to mail or fax the reports she created to the central office, or to maintain office supplies or personnel records, falls well short of the substantiality threshold required by *Davis* and other authorities. This is simply not one of the "unusual instances" described in *Davis* in which a change in work assignments may satisfy the substantiality requirement.[20]

---

[20]       Plaintiff places a great deal of stock in the Commission's failure to explain the reasons for changing her work assignments. But she points to no case law in which Title VII has been held to require an employer to provide an employee with a contemporaneous justification for any adjustment to job duties. Likewise, she protests that she was left unable to do her job, but the fact is that she continued to perform her job for many months after these changes in work assignments went into effect.

For all of the foregoing reasons, the undersigned concludes that, viewing plaintiff's allegations collectively, no reasonable jury could deem the relatively trifling job modifications and petty inconveniences that she describes as the kind of adverse employment action that Title VII was designed to redress. Because there is no genuine issue of material fact that might support a jury finding that plaintiff was subjected to an "adverse employment action," Belt cannot establish a *prima facie* case of retaliation under Title VII. Accordingly, she is unable as a matter of law to proceed with her retaliation cause of action. *See Davis*, 245 F.3d at 1246 (explaining that adverse employment action is an indispensable element of plaintiff's Title VII case, and that failure to present sufficient evidence for a reasonable jury to find that element is therefore fatal to Title VII cause of action).[21]

## IV.   Conclusion.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact and that defendant is entitled to entry of judgment in its favor as a matter of law. As such, the Motion for Summary Judgment (doc. 28) is **granted**, and plaintiff's claims are **dismissed with prejudice**.


DONE and ORDERED this 12th day of July, 2005.


                                        s/ WILLIAM H. STEELE
                                        UNITED STATES DISTRICT JUDGE

───────────────────

Plaintiff offers no evidence that she was disciplined, threatened, or that her job was ever placed in jeopardy because of the periodic lapses in information, documentation or supplies that she recites in her testimony. Her complaints about the occasional missing printer cartridge or incomplete documentation for a report were not properly raised in the Complaint. Even if they were, these minor dissatisfactions are exactly the kind of run-of-the-mine workplace tribulations that the Eleventh Circuit has taken pains to excise from the ambit of Title VII. *See, e.g., Gupta*, 212 F.3d at 587 (noting that Title VII does not make actionable "the ordinary tribulations of the workplace").

[21]      In light of this determination, the Court need not consider defendant's alternative arguments that plaintiff has failed to show a causal connection between her protected activity and any adverse employment action, nor need the Court address whether defendant has adequately rebutted any *prima facie* case by presenting legitimate nonretaliatory reasons for the personnel decisions at issue. Belt having failed to show an adverse employment action, her *prima facie* showing is deficient, and her Title VII retaliation claim collapses.